United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MENDOCINO WINE GROUP, LLC,
Plaintiff,

v.

QBE AMERICAS, INC., et al.,
Defendants.

Case No. 15-cv-06342-HSG

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 10

Pending before the Court is Unigard Insurance Company and QBE Americas, Inc.'s motion to dismiss Plaintiff Mendocino Wine Group, LLC's complaint, or in the alternative, to dismiss QBE Americas, Inc. and to strike Plaintiff's request for punitive damages. Dkt. No. 10 ("Mot."). For the reasons articulated below, Defendants' motion to dismiss Plaintiff's complaint is GRANTED WITH LEAVE TO AMEND.[1]

## I. BACKGROUND

### A. The Underlying Lawsuit

This insurance coverage dispute arises from *Dolan v. Mendocino Wine Group, LLC*, No. C 13-04114-JCS (the "Underlying Action"), filed on January 25, 2013, against Plaintiff in the U.S. District Court for the Northern District of California. Dkt. No. 4-1 ("Compl."), Attachment A. The following facts were alleged in the Underlying Action's second amended complaint:

In March 2004, Dolan and the Thornhill family formed Mendocino Wine Group

---

[1] On February 2, 2016, Plaintiff requested that the Court take judicial notice of several documents. Dkt. No. 22-1. The Court GRANTS the request to take judicial notice of (1) the first amended complaint in the Underlying Action, (2) the second amended complaint in the Underlying Action, and (3) the Unigard Policy, under the incorporation by reference doctrine. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Because the remaining documents do not affect the Court's analysis, the Court DENIES AS MOOT Plaintiff's request to judicially notice them.

("MWG"), and Dolan began serving as president of MWG. Compl., Attachment C ("Dolan SAC") ¶¶ 1, 20. Dolan is a "fourth generation winemaker with a long and well-respected history in the wine industry," who has achieved a level of notoriety such that "members of the industry and consumers view any trademark used in connection with wine that incorporates 'Dolan,' either separately or in combination with 'Paul,' as uniquely associated with Dolan." *Id.* ¶¶ 10, 17. Shortly after the formation of MWG, Dolan agreed to permit MWG to develop wine using Dolan's name as a trademark, so long as Dolan "was able to control the nature and quality of wine that would be sold under his name." *Id.* ¶ 21.

MWG began selling wine under the Paul Dolan trademark, but in January 2012, Dolan was "ousted" from MWG. *Id.* ¶ 31. Dolan "never intended that his name, or any other aspect of his persona, could be used by MWG forever," and in October 2012, Dolan revoked his consent for MWG to use his name in connection with any Dolan trademark. *Id.* ¶¶ 29, 35. Despite this revocation, "MWG [] continued to distribute and sell wine under the Paul Dolan trademark, and [] continued to use Dolan's name to market, advertise and promote MWG's products." *Id.* ¶ 36. MWG's continued use of the Dolan trademark violated Dolan's right of publicity and "cause[d] damage to Dolan because it directly conflict[ed] with Dolan's ability to use his name in connection with wine and wine-related products and services, and because it falsely suggest[ed] that the goods distributed and sold by MWG [were] connected with Dolan." *Id.* ¶¶ 40, 41.

Based on the aforementioned allegations, Dolan brought an action against Plaintiff for the following claims: (1) a declaration that MWG could no longer use the Paul Dolan trademark; (2) unfair competition in violation of the Lanham Act; (3) violation of the common law right of publicity; (4) violation of the statutory right of publicity under California Civil Code § 3344; and (5) cancellation of the Dolan trademark registration. *Id.*

**B. The Instant Action**

**i. The Unigard Policy**

Plaintiff alleges that at all relevant times, it was insured by a Commercial General Liability Insurance Policy issued by Defendant Unigard, and administered, directed, managed and/or otherwise overseen by QBE and/or Does 1-50 (the "Unigard Policy"). Dkt. No. 10-1; Compl.

¶ 17.

Under Coverage B, "Personal and Advertising Injury Liability," the Unigard Policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply…

Unigard Policy at 7 ¶ 1. Thereafter, the Unigard Policy defines "personal and advertising injury" as "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" and "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." *Id.* at 18 ¶ 14(d), (e).

Under the Coverage B Exclusions, "[t]he insurance does not apply to . . . I. Infringment of Copyright, Patent, Trademark Or Trade Secret" defined as:

> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."
>
> However, the exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress, or slogan.

Unigard Policy at 8, subsection I ("Intellectual Property Exclusion").

**ii. Factual Background**

For purposes of this motion, the Court accepts the following as true: Plaintiff timely tendered the Underlying Action to Defendants, and on September 12, 2013, Defendants responded by letter that they had no duty to defend or to indemnify the Underlying Action based on the Intellectual Property Exclusion. Compl. ¶ 19. Defendants invited Plaintiff to submit additional information that might impact Defendants' coverage decision, and on February 26, 2014, Plaintiff responded, asserting that Defendants had a duty to defend under *Gary v. Zurich Ins. Co.*, 65 Cal.2d 263 (1996). *Id.* ¶ 20. On April 7, 2014, Defendants sent another letter, stating that based on the claims alleged in the Underlying Action, Defendants had no duty to defend under Coverage

A for "Bodily Injury and Property Damage Liability." *Id.* ¶¶ 21-22. Plaintiffs were forced to shoulder their own defense in the Underlying Action, and ultimately settled the Underlying Action at a cost of "several hundred thousands of dollars." *Id.* ¶¶ 23, 24.

On September 11, 2015, Plaintiff filed the instant action alleging (1) breach of contract for failure to defend under the Unigard Policy and (2) breach of the covenant of good faith and fair dealing. *Id.* Plaintiff seeks actual, compensatory, and punitive damages, as well as attorney's fees and costs. *Id.* at 12.

## II. DISCUSSION

Defendants' motion requests that the Court dismiss Plaintiff's complaint in its entirety for failure to state a claim. Mot. at 1. In the alternative, Defendants request that the Court dismiss Defendant QBE Americas, Inc., and strike Plaintiff's request for punitive damages. *Id.* Because the Court holds that Plaintiff fails to state a claim, the Court need not address Defendants' requests to dismiss Defendant QBE Americas, Inc. or to strike Plaintiff's request for punitive damages.

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

**B. Analysis**

Defendants move to dismiss Plaintiff's breach of contract claim as barred by the Unigard Policy's Intellectual Property Exclusion. Mot. at 11. Further, Defendants contend, there can be no claim for breach of the covenant of good faith and fair dealing where there is no duty to defend. *Id.* at 15. In opposition, Plaintiff asserts that two claims articulated in the Underlying Action triggered Defendants' duty to defend: (1) Dolan's claim for misappropriation of his name and likeness and (2) Dolan's claim for defamation. Dkt. No. 22 ("Opp'n") at 8-12.

**iii. Breach of Contract (Claim One)**

The Court begins with first principles. California law controls this dispute in diversity. *See Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001). Under California law, "interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation." *State v. Continental Ins. Co.*, 55 Cal. 4th 186, 195 (2012). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (1990). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation." *Waller v. Track Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) (quoting Cal. Civ. Code § 1644).

In the context of the duty to defend, "[a]n insurer must defend its insured against claims that create a *potential* for indemnity under the policy." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.

4th 643, 654 (2005) (emphasis in original); *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276-77 (1966). "The duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded." *Scottsdale Ins. Co.*, 36 Cal. 4th at 654. In determining whether a duty to defend exists, courts look not only to the "pleaded word but the potential liability created by the suit." *Gray*, 65 Cal. 2d at 276. This is because "current pleading rules liberally allow amendment," and "the third party plaintiff cannot be the arbiter of coverage." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 296 (1993). However, "[j]ust as a third party complainant is not the arbiter of the coverage of an insurance policy, so is it also the rule that insureds themselves may not manufacture coverage by speculating about unpled third party claims." *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1117 (Cal. Ct. App. 1995); *Travelers Prop. Cas. Co. of Am. v. KFx Med. Corp.*, No. 13-17301, 2016 WL 145996, at *1 (9th Cir. Jan. 8, 2016). "An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson*, 37 Cal. App. 4th at 1114.

Insurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003), *as modified on denial of reh'g* (Sept. 17, 2003) (internal notations omitted). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose Chem. Corp.*, 6 Cal. 4th at 300. However, where the insured does not allege the potential for coverage on the face of an underlying complaint, and does not plausibly allege that the underlying complaint could be amended to come within the ambit of coverage, a district court may properly dismiss an action at the pleading stage. *See e.g.*, *Bullpen Distribution, Inc. v. Sentinel Ins. Co.*, 584 F. App'x 769, 771-72 (9th Cir. 2014); *Live Nation, Inc. v. Illinois Nat. Ins. Co.*, 312 F. App'x 898, 899 (9th Cir. 2009); *Purplus Inc. v. Hartford Cas. Ins.*, No. C 12-03689 JSW, 2013 WL 1149768, at *6 (N.D. Cal. Mar. 19, 2013).

**a. Misappropriation of Likeness**

In the Underlying Action, Dolan asserts that Plaintiff's continued use of the Paul Dolan

trademark, name, and likeness violated his right of publicity. Dolan SAC ¶¶ 52-59. Plaintiff contends that this claim for misappropriation of Dolan's name and likeness falls under the Unigard Policy's coverage for privacy violations. Opp'n at 8-9. Defendants counter that the Intellectual Property Exclusion bars coverage. Mot. at 11. The Court agrees with Defendants.

"California has long recognized a common law right of privacy which includes protection against appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 413 (9th Cir. 1996) (quoting *Eastwood v. Superior Court for Los Angeles County*, 149 Cal.App.3d 409 (Cal. Ct. App. 1983)); *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 391 (2001). Thus, a claim for misappropriation of one's name or likeness generally falls under the right of privacy rubric. *Aroa Mktg., Inc. v. Hartford Ins. Co. of Midwest*, 198 Cal. App. 4th 781, 787 (Cal. Ct. App. 2011), *as modified* (Aug. 25, 2011).

However, California recognizes two types of appropriation claims distinguished by "the nature of the plaintiff's right and the nature of the resulting injury." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 541 (Cal. Ct. App. 1993). The first type of appropriation, the right of publicity, is "in essence that the reaction of the public to name and likeness, which may be fortuitous or which may be managed or planned, endows the name and likeness of the person involved with commercially exploitable opportunities." *Id.* at 541-42. The second type of appropriation "brings injury to the feelings," "concerns one's own peace of mind," and "is mental and subjective." *Id.* at 542. Unlike the "mental and subjective" type of appropriation that "brings injury to feelings," the right of publicity "protects a form of intellectual property that society deems to have some social utility." *Comedy III Prods., Inc.*, 25 Cal. 4th at 399. In other words, "the right of publicity is an intellectual property right." *Aroa Mktg., Inc.*, 198 Cal. App. 4th at 788.

In *Aroa Marketing, Inc. v. Hartford Ins. Company of Midwest*, plaintiff Aroa appealed from an order sustaining defendant Hartford's demurrer to Aroa's claim that Hartford had breached its duty to defend. *Aroa Mktg., Inc.*, 198 Cal. App. 4th 781. In the underlying lawsuit, *Radcliffe v. Aroa Marketing, Inc., et al.* (the "Radcliffe Action"), Radcliffe was a model hired to film an exercise video for Aroa's business. *Id.* at 785. Aroa allegedly used the exercise video for

purposes beyond the scope of Radcliffe's contract and refused to compensate Radcliffe for this unauthorized use. *Id.* As a result, Radcliffe asserted claims against Aroa for statutory and common law misappropriation of likeness, breach of contract, unjust enrichment, and unfair competition. *Id.* According to Radcliffe, Aroa's actions "diminished her marketability and publicity value as a professional actor and model" and "deprived [her] of her right to publicity." *Id.* Aroa tendered the Radcliffe Action to Hartford, but Hartford declined to defend, stating that "it is well settled under California law, both statutory and common law, that, while the right of publicity is derivative from a right of privacy, it is clearly considered an intellectual property right which is specifically excluded from coverage under the [Hartford] [p]olicy." *Id.*

The California Court of Appeal affirmed the absence of a duty to defend, finding that while the Hartford policy covered damages for violations of privacy rights, it excluded coverage for injuries arising out of "any violation of any intellectual property rights" "such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity." *Id.* at 789. Thus, the Hartford policy would have triggered a duty to defend Radcliffe's right to publicity claim but for the intellectual property exclusion. *Id.* The court distinguished Radcliffe's claim from a subjective, mental misappropriation claim because "Radcliffe did not seek damages for misappropriation that injured her feelings." *Id.* Instead, Radcliffe "sought compensation for the unauthorized use of her likeness" and alleged that "Aroa diminished her marketability and publicity value and deprived her of her right of publicity." *Id.*

The Court finds that the current action is indistinguishable from *Aroa*, and Defendants thus had no duty to defend. As in *Aroa*, Plaintiff contends that Dolan's misappropriation claim triggered Defendants' duty to defend because the Unigard Policy covers "[p]ersonal and advertising injury," "that violates a person's right of privacy." Opp'n at 8-9. However, in the Underlying Action, Dolan alleges that Plaintiff's continued use of the Dolan trademark violated Dolan's right of publicity and "cause[d] damage to Dolan because it directly conflict[ed] with Dolan's ability to use his name in connection with wine and wine-related products and services, and because it falsely suggest[ed] that the goods distributed and sold by MWG [were] connected with Dolan." Dolan SAC ¶¶ 40, 41. As with Radcliffe's claims in *Aroa*, completely absent from

these allegations is any suggestion that Dolan sought "damages for misappropriation that injured [his] feelings." *See Aroa Mktg., Inc.*, 198 Cal. App. 4th at 789. Instead, the gravamen of Dolan's claim is that Plaintiff's use of his name and likeness "diminished [his] marketability and publicity value and deprived [him] of [his] right of publicity." *See id.* Consequently, under the rationale of *Aroa*, Dolan's right of publicity is an intellectual property right, and the plain language of the Intellectual Property Exclusion excludes coverage for personal and advertising injury "arising out of the infringement of . . . intellectual property rights." Unigard Policy at 8, subsection I.

Plaintiff attempts to distinguish this action from *Aroa* by highlighting Dolan's allegations that Plaintiff harmed his "reputation, business, and goodwill." Opp'n at 9-10. Plaintiff asserts that under *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1033 (9th Cir. 2008), allegations of reputational damage are "sufficient to raise the potential of an award of mental anguish or emotional distress damages." *Id.* However, *Manzarek* does not stand for such a broad proposition. In *Manzarek*, a famous band, *The Doors*, began planning and advertising national and international tours without its former drummer or its former vocalist. *Id.* at 1028-29. The former drummer brought an action alleging that defendants had damaged his "reputation and stature by causing people to believe that he was not . . . an integral and respected part of *The Doors* band, or [was] one member who easily [could] be replaced by another drummer." *Id.* at 1033. The Ninth Circuit found that the nature of the drummer's alleged reputational injury was sufficient to raise the potential of mental anguish or emotional distress damages. *Id.*

Unlike in *Manzarek*, Dolan's claims do not contain any allegations that plausibly suggest that Plaintiff's actions caused him mental anguish by, for example, implying that Dolan was not a distinguished leader in the wine community. While Dolan theoretically could have included allegations to that effect, insurers need not "infer *the existence of additional allegations* not actually included within the underlying third party complaint, merely because it is aware those additional claims might have been plausibly included." *San Miguel Cmty. Ass'n v. State Farm Gen. Ins. Co.*, 220 Cal. App. 4th 798, 809 (Ct. App. 2013) (emphasis in original). As such, the Court finds that Dolan's allegations regarding the harm to his reputation, business, and goodwill, standing alone, are insufficient to distinguish this case from *Aroa*.

Accordingly, the Court holds that the facts alleged in the Underlying Action assert potential liability for violations of Dolan's right to publicity, which are excluded from coverage under the Intellectual Property Exclusion, and did not prompt a duty to defend.

**b. Defamation**

Next, Plaintiff argues that Dolan's complaint in the Underlying Action alleges "every element of a defamation claim," thereby triggering Defendants' duty to defend. Opp'n at 10-12 (emphasis in original). Defendants respond that Dolan's complaint fails to allege the publication of defamatory material. Dkt. No 26 ("Reply") at 6-8. The Court again agrees with Defendants.

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citing 5 Witkin, Summary 10th (2005) Torts, § 529, p. 782). Publication "is defined as a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made." *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (Cal. Ct. App. 2000). A claim of disparagement "requires a plaintiff to show a false or misleading statement that (1) specifically refers to the plaintiff's product or business and (2) clearly derogates that product or business." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 284 (2014). "The question [of] whether a statement is reasonably susceptible to a defamatory interpretation is a question of law for the trial court." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 647 (Cal. Ct. App. 1999), *as modified* (June 23, 1999). The damage caused by defamation typically takes the form of injury to a person's reputation. *Truck Ins. Exch. v. Bennett*, 53 Cal. App. 4th 75, 85 (Cal. Ct. App. 1997). Moreover, "a party's attempt to copy or infringe on the intellectual property of another's product does not, without more, constitute disparagement." *Hartford Cas. Ins. Co.*, 59 Cal. 4th at 296; *see also Bullpen Distribution, Inc. v. Sentinel Ins. Co.*, 584 F. App'x 769, 771 (9th Cir. 2014).

While Dolan alleges that Plaintiff injured his reputation and goodwill, Dolan's allegations do not plausibly suggest that Plaintiff's misappropriation constituted a defamatory statement. Rather, Dolan contends that his reputation was harmed because Plaintiff "continued to distribute

and sell wine under the Paul Dolan trademark, and [] continued to use Dolan's name to market, advertise and promote [Plaintiff's] products." Dolan SAC ¶ 36. Consequently, Plaintiff's use of Dolan's name and likeness damaged Dolan because it "directly conflict[ed] with Dolan's ability to use his name in connection with wine and wine-related products and services, and because it falsely suggest[ed] that the goods distributed and sold by [Plaintiff] [were] connected with Dolan." *Id.* ¶ 41. These allegations support a violation of Dolan's right of publicity; however, nothing about Plaintiff's wine advertisement can be plausibly interpreted as disparaging or defamatory towards Dolan. Indeed, Plaintiff's alleged attempt to falsely sell its wine under Dolan's name is more akin to flattery. Because Plaintiff's trademark infringement, standing alone, does not constitute a defamatory or disparaging statement, the facts alleged in the Underlying Action do not create the potential for coverage under the Unigard policy. *See Nichols v. Great Am. Ins. Companies*, 169 Cal. App. 3d 766, 775 (Cal. Ct. App. 1985) (stating that a claim for defamation must fail when "[t]he necessary element of a defamatory publication or utterance is missing from the complaint.").

Accordingly, the Court finds that Dolan's allegations in the Underlying Action fail to plausibly articulate a defamation claim and did not trigger a duty to defend.

Because Dolan's claims in the Underlying Action are either excluded under the Intellectual Property Exclusion or insufficient to trigger Defendants' duty to defend, the Court GRANTS Defendants' motion to dismiss Plaintiff's breach of contract claim.

**iv. Breach of the Covenant of Good Faith and Fair Dealing (Claim Two)**

Defendants also move to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing for failure to state a claim. Mot. at 5-6.

"California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." *Manzarek*, 519 F.3d at 1034 (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1 (1995)). The Court found above that Plaintiff has failed to state a breach of contract claim against Defendants because Defendants had no duty to defend Plaintiff in the Underlying Action. Consequently, Plaintiff's claim for breach of the covenant of good faith and fair dealing must also fail.

United States District Court
Northern District of California

As such, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing.

**III. CONCLUSION**

For the aforementioned reasons, the Court GRANTS WITH LEAVE TO AMEND Defendants' motion to dismiss Plaintiff's complaint. While the Court would typically dismiss such claims with prejudice on the basis that amendment would be futile, *see Lopez*, 203 F.3d at 1130, Plaintiff's counsel explained at the March 31, 2016, hearing that he did not represent Plaintiff at the time that the currently operative complaint was filed. Based on counsel's request for an opportunity to amend, Plaintiff may file a first amended complaint within 21 days of the date of this Order if it can plausibly allege facts that suggest that there existed a potential for indemnity under the Unigard Policy.

**IT IS SO ORDERED.**

Dated: August 5, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge